# Pottsville Bank, Appellant, *v.* Minersville Water Company.

*Corporations—Dissolution—Liquidating trustee—Winding up business—Notice—Laches—Equity.*

The stockholders of a corporation like members of a partnership, company, or association, may, by permitting a person to act for and represent the corporation in all matters pertaining to the collection of debts, payment of liabilities, settlement of accounts, distribution of proceeds and doing other acts pertaining to the winding up of the business, confer by acquiescence and assent such powers upon the person so acting as will constitute him a liquidating trustee within the meaning of the law.

The act of dissolution of a corporation like the act of association, is not a corporate act, but an act of the members of the corporation. They may commit to their officers the business of effecting it in all its details, but they are not required to do so by the terms of their association, and in effecting such a purpose the officers are rather trustees of the members than corporate functionaries.

A member of the board of directors of a corporation who is also secretary and attorney for the corporation, and has had for a period of twenty-five years possession of the books, papers and assets of the corporation, and has exercised with the acquiescence and consent of the stockholders authority to do every act, and perform every duty which the corporation itself might have done, is a liquidating trustee.

The board of directors of a bank voted to close up its doors and wind up its business, and deliver all its books, papers and other assets to one of the directors who was also the bank's secretary and attorney. Among the papers that came into the possession of the attorney were certificates of stock which the bank held as collateral for a loan made five years before. Five years after the papers came into the attorney's possession an action was instituted against the corporation which had issued the stock to determine to whom the dividends on the stock held by the bank as collateral should be paid. The liquidating trustee of the bank had notice of this suit, which resulted in a judgment for plaintiff therein. Nothing was done thereafter by the bank or its liquidating trustee for twenty years when an action of trespass was brought by the bank against the corporation for damages resulting from a transfer of the stock by the corporation to the person to whom the dividends had been adjudicated. *Held,* that the notice to the liquidating trustee was notice to the bank, and that the laches of the bank precluded a recovery.

Argued Feb. 13, 1905. Appeal, No. 119, Jan., T., 1904, by plaintiff, from judgment of C. P. Schuylkill Co., May T., 1903, No. 286, on verdict for defendant in case of Pottsville Bank

v. Minersville Water Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and ELKIN, JJ.    Affirmed.

Trespass to recover damages for the conversion of the stock of a corporation.

The facts are stated by the opinion of the Supreme Court.

The court charged in part as follows:

[Mr. Nicholas Heblich, who was living at that time, and who had in his possession all of the assets, all the papers and books of the Pottsville Bank, as appears by this minute, and, as I understand the evidence, testified at the hearing in reference to this stock, and it is fair to presume that at that time he, at least individually, knew that this stock was held or claimed by Mrs. Roehrig, and the question arises whether or not that was not notice to the bank. That question has been argued on both sides by counsel very fully, counsel for the water company taking the position that under the special facts of this case it was notice to the Pottsville Bank that there was a counterclaim to this stock, and that the Minersville Water Company had received notice that Mrs. Roehrig claimed this stock. Counsel for the plaintiff, Mr. Bechtel, thinks that the notice to Heblich was not notice to the bank, and has cited some authorities. I agree with Mr. Bechtel's authorities, as a rule, but under the facts of this case it seems to me that notice to Mr. Heblich was notice to the bank, for the reason that by that resolution of the bank, of August 22, 1878, the books and the property and papers of the bank were transferred from the bank, wherever it was held, which is immaterial, to Mr. Heblich's possession and custody, and these certificates which are in controversy were found in his office after his death. We think, under that state of facts, he having control of these papers and assets, presumably for the purpose of collecting in the assets for the bank, in order that the bank might wind up its existence, taking that fact into consideration with the fact that the minute book of the bank shows they held no more meetings, except some in 1880, the minutes of which are simply on loose sheets of paper, it seems to me to support the contention of counsel for defendant that Mr. Heblich was holding these papers and books and assets of the bank for the purpose

of winding up or collecting them in and enabling the bank to wind up its corporate existence; and that the bank, whilst it had a corporate existence from that time on down to the present time, so far as the evidence goes, yet at no time seemed to exercise its corporate rights, except for the purpose of keeping its organization up. We think, therefore, that notice to Mr. Heblich at that time, under the peculiar state of facts as exist in this case, was notice to the bank that there was this counterclaim to the stock in the defendant company.] [8]

Under the evidence, it seems that the Minersville Water Company came into court and desired to have the Pottsville Bank come in and interplead; but, for reasons, which are not expressed, the court refused to allow it at that time, but they directed a verdict, under the evidence which was submitted to them, for Mrs. Roehrig, for the dividends arising from this stock. It seems to me, there having been an adjudication of that kind (whilst it is true the court, in its opinion, says that it is not passing upon the rights of the Pottsville Bank at that time) that it was at least notice to the Pottsville Bank, through Mr. Heblich, of the counter contention which existed in this case, and notwithstanding that which occurred back on July 2, 1883, when the finding of the court in that respect was entered of record, there seems to have been nothing done on the part of the Pottsville Bank to assert its rights or to protect itself as the bona fide holder of these certificates of stock, although it knew that the Minersville Water Company had been called upon by Mrs. Roehrig to pay the dividends from it to Mrs. Roehrig. Although it knew that there had been an adjudication that the dividends to that stock belonged to Mrs. Roehrig, by this court, yet from that time down to 1903 the Pottsville Bank or its representatives seems to have rested on its oars and to have done nothing, so far as the evidence appears in this case.

[It further appears that some time after the adjudication of this court, the Minersville Water Company issued the certificates of stock to Mrs. Roehrig for the same stock which is in controversy here. Presumably they waited for some action on the part of the Pottsville Bank to assert its title, if it intended to assert its title, and what was the reason of the delay is unknown. Possibly when Mr. Heblich, who had charge of these

matters, discovered what Mr. Wadlinger had sworn to about his arrangement with Mr. Saylor, the president of the bank, who was dead at that time, he concluded that the bank, practically speaking, had given up its claim and had settled it for $300, and had received $200 on it, and, therefore, was not entitled to the certificates of stock.] [9] I do not say that is so, understand, but I simply say that may have been the reason for this delay. Whether it was or was not does not appear, but the fact appears that from 1883, the time of the filing of this adjudication and the time of the filing of this testimony, down to 1903, a period of over nineteen years, no step was taken by the Pottsville Bank to assert its title as against the Minersville Water Company to this stock which is in controversy.

In 1903, Mr. Kramer, who represented the Pottsville Bank after the death of the late Nicholas Heblich, in company with his colleague, Mr. H. O. Bechtel, seems to have made a demand upon the Minersville Water Company for the transfer of this stock, and they declined to transfer it or to issue new certificates to the Pottsville Bank, on the ground that there was no stock standing on the books any longer in the name of John Wadlinger, as I understood the evidence ; I think that is correct. Then Mr. Kramer and Mr. Bechtel brought suit, an action in damages, against the Minersville Water Company, for refusing to issue certificates of stock, and hence you have the controversy, the Minersville Water Company denying their right for about nineteen years, and during that time they lay idly by, they made no effort to protect their rights, and that certificates of stock in that time had been issued to Mrs. Roehrig, and that, therefore, the Minersville Water Company ought not to be called upon to respond in damages for refusing to issue new certificates of stock or transfer the certificates, which had been issued to John Wadlinger, to the Pottsville Bank.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (8, 9) above instructions, quoting them.

*H. O. Bechtel*, with him *W. L. Kramer*, for appellant.—The

delivery of the stock, accompanied with the irrevocable power of attorney, passed title to the stock as between Wadlinger and the bank; and, as between them it was an executed contract against which the statute of limitations could not run, and which required only the presentation of the certificates and the power of attorney to the proper officers in order to transfer the stock to the Pottsville Bank on the books of the Minersville Water Company: Minnich v. Keystone Nat. Bank, 12 Pa. Dist. Rep. 638; Finney's App., 59 Pa. 398; Shattuck v. American Cement Co., 205 Pa. 197.

It is a well-settled rule of law that knowledge acquired by an officer of a corporation other than that acquired in the line of the performance of his duty as such officer, is not a knowledge to the corporation employing him: Sitler v. Fire Ins. Co. 18 Pa. Superior Ct. 139; Wetzel v. Linnard, 15 Pa. Superior Ct. 503; B. & P. Ry. Co. v. American-Bangor Slate Co., 203 Pa. 6; Budd v. Olver, 148 Pa. 194; Houseman v. Girard Mut. B. & L. Assn., 81 Pa. 256; Wilson v. McCullough, 23 Pa. 440; Custer v. Tompkins County Bank, 9 Pa. 27; Wilson v. Second Nat. Bank, 7 Atl. Repr. 145; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Allen v. First Nat. Bank, 127 Pa. 51.

The statute of limitation does not begin to run until a right of action accrues: Swearingen v. Sewickley Dairy Co., 198 Pa. 68; Marsteller v. Marsteller, 93 Pa. 350; Smith v. Bell, 107 Pa. 352; Eichman v. Hersker, 170 Pa. 402; Taylor v. Witman, 3 Grant, 138.

*George M. Roads*, for appellee.—The statute "runs only from the time when a demand for registration was made:" Cleveland, etc., R. R. Co. v. Robbins, 35 Ohio St. 483; Iron R. R. Co. v. Fink, 41 Ohio St. 321; Trickett on the Law of Limitations in Pennsylvania, sec. 226, p. 298; Alexander v. Leckey, 9 Pa. 120; Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22; Steele v. Steele, 25 Pa. 154; Waterman v. Brown, 31 Pa. 161; Morrison v. Mullin, 34 Pa. 12.

The bank's agent knew that Dorothy Roehrig was claiming in court the dividends on this very stock, that a demand for these shares had previously been made by the officers of the bank, without avail. Having thus been put upon inquiry, he and, therefore, the bank, is presumed to have known what that

inquiry would reveal: Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232.

OPINION BY MR. JUSTICE ELKIN, April 24, 1905 :

If Nicholas Heblich can be considered under the facts of this case a liquidating trustee of the appellant, it necessarily follows that the cause of action was properly disposed of in the court below. It is conceded that neither the stockholders nor the board of directors by any formal act, or vote, or written authority, in express terms constituted him a liquidating trustee. We' do not consider this necessary. The stockholders of a corporation, like members of a partnership, company or association, may, by permitting a person to act for and represent the corporation in all matters pertaining to the collection of debts, payment of liabilities, settlement of accounts, distribution of proceeds and doing other acts pertaining to the winding up of the business, confer by acquiescence and assent such powers upon the person so acting as will constitute him a liquidating trustee within the meaning of the law. So far as the evidence shows the appellant did not pursue the statutory requirements in respect to the winding up of the business of the corporation. The provisions of the Act of April 9, 1856, P. L. 293 might have been followed, but the record in this case is entirely silent on the subject. We gather from the facts, however, that this method was not adopted. The act of 1856 recognizes the application of the general rules in reference to the accounts of assignees and trustees in such cases. In the construction of that statute our courts have applied equitable principles. In Lauman v. Lebanon Valley Railroad Co., 30 Pa. 42, Mr. Chief Justice LOWRIE said: " The act of dissolution, like the act of association, is not a corporate act, but an act of the members of the corporation. They may commit to their officers the business of effecting it in all its details, but they are not required to do so by the terms of their association and in effecting such a purpose the officers would be rather trustees of the members than corporate functionaries." See also Bailey's Appeal, 96 Pa. 253 ; in re Credit Mobilier of America, 10 Phila. 2. These authorities indicate that the rules of law applied by the courts to acts done by directors or officers of corporations

relating to the dissolution thereof are the equitable principles governing trustees or others acting in a fiduciary capacity. Our courts have long recognized this principle in dealing with partners.    Garretson v. Brown, 185 Pa. 447, was a case in which the opinion of the master was affirmed by this court. In discussing this question, the master said : " It seems to be clear from all of the cases that formal action by way of vote, or written document, or similar process, is not a prerequisite to the exercise of such right by one member of a partnership, or to the legal imposition upon the partner so acting of all the duties and consequent responsibility of such office : " Wilson v. Waugh, 101 Pa. 233 ; Siegfried v. Ludwig, 102 Pa. 547 ; Campbell v. Floyd, 153 Pa. 84 ; Jutte v. Hutchinson, 189 Pa. 218.  We see no good reason why the same rule should not apply to a member of the board of directors, the secretary and attorney for the corporation, who for a period of twenty-five years, having the possession of the books, papers and assets of the corporation, exercising with the acquiescence and consent of the stockholders, authority to do every act and perform every duty which the corporation itself might have done should not be held to be a liquidating trustee.  We must therefore consider Nicholas Heblich a liquidating trustee, and notice to him under the circumstances of this case was notice to the bank, and its failure to assert right to or ownership of the certificates of stock, the value of which is involved in this controversy, for a period of more than thirty years after it obtained possession of the same as collateral security for a loan, and almost twenty years after an amicable action had been instituted in the court of common pleas of Schuylkill county for the purpose of determining to whom the dividends should be.paid, on which action judgment was entered, of which action and judgment the bank is presumed to have notice through its liquidating trustee, is such laches as will preclude the appellant from recovering in this case.

On January 5, 1878, the board of directors of the appellant bank adopted a resolution to close its doors on the following Saturday and wind up its business, unless otherwise directed by the stockholders at a meeting to be called prior to that time. The evidence does not disclose what action was taken by the stockholders, but inasmuch as the bank did proceed to wind

up its business and settle its affairs, it must be presumed that the stockholders adopted the resolution of the board of directors and authorized the winding up of the corporate business. Nothing is shown by the record to throw any light upon the manner in which the business was closed out. The last formal meeting of said board was held August 22, 1878, at which a resolution was adopted authorizing the bank property, consisting of books, notes, papers and other assets, to be removed from the bank building to the office of Nicholas Heblich. In accordance with this authority the books, notes, papers and other personal property, including the bank safe, were so removed, where they remained under his care, supervision and control until his decease December 24, 1902. The meeting of the board of directors August 22, 1878, was the last at which formal action was taken upon the affairs of the company and spread upon the minute book. After the removal of the assets, books and accounts of the bank to the office of Heblich in August, 1878, he was permitted to exercise absolute authority in the matter of disposing of the property of the bank, collecting the notes, making settlement of accounts, and in the performance of every act, duty or thing in which the bank was interested. The bank went out of business in 1878, and has not performed any corporate act from that time until the institution of this proceeding, except it is claimed by counsel, and not disputed, that some kind of informal meetings were held from time to time for the purpose of electing nominal officers to preserve the franchise and corporate entity of the bank.

Let us see how these facts affect the rights of the parties to this action. On April 10, 1872, John Wadlinger, who was the owner of thirty-one shares of stock in the defendant water company, delivered the certificates therefor with an irrevocable power of attorney to the president of the appellant bank, which power of attorney authorized said president to transfer the certificates of stock to the bank. This stock was pledged as collateral security for a loan made to Wadlinger. It stood in the name of Wadlinger on the books of the defendant company at that time. On September 26, 1872, Wadlinger in company with Frederick Roehrig went to Jacob S. Lawrence, treasurer of the defendant company, who had charge of the stock ledger,

the only book in which transfers were made, and entered thereon an assignment of the shares of stock in question to the said Frederick Roehrig. This assignment was properly executed by Wadlinger in the presence of a witness. On the same day the treasurer charged the stock account of Wadlinger with the shares so transferred, and credited the account of Roehrig with the same. Wadlinger did not produce the original certificates at the time the transfer was made, alleging to the treasurer that he had mislaid or lost them. On March 15, 1873, Wadlinger made an affidavit which was presented to the board of directors, stating therein that he had lost or mislaid said certificates of stock; that he had sold or transferred the same to Frederick Roehrig, and authorized and instructed the defendant company to issue new certificates to said Roehrig. The evidence shows that Roehrig acted in good faith as a bona fide purchaser for value, without notice of the fact that the original certificates had been transferred to the plaintiff bank as collateral security for the loan of Wadlinger. Although new certificates were not issued to Roehrig at that time, his name was entered on the books of the company as a stockholder and dividends on the stock were regularly paid to him or his representative until 1881. Prior to this time the water company did not have notice or knowledge of the fact that Wadlinger had pledged these certificates of stock to the bank. In 1881 the water company was informed that the original certificates were held by the bank as collateral security for the debt of Wadlinger. The board of directors of said water company thereupon adopted a resolution instructing the treasurer not to pay any more dividends to Roehrig or any other claimant until it was ascertained to whom the stock belonged. In the meantime Roehrig died and his interest in these certificates of stock passed by his will to his widow. On September 1, 1882, an amicable action in assumpsit was entered in the court of common pleas of Schuylkill County between Dorathea Roehrig, who was the widow of Frederick Roehrig, deceased, and the Minersville Water Company, for the purpose of determining whether said plaintiff was entitled to recover the dividends declared and unpaid on said stock. On November 20th following the defendant water company presented a petition to the court setting out these facts, and asking for a

rule upon the appellant bank to show cause why it should not intervene in order that all of the rights of the parties might be determined in that proceeding.    The court refused to grant the rule without assigning any reason therefor.    It does not appear from the evidence whether the bank had formal and legal notice of the institution of the amicable action or the presentation of the petition asking that a rule be granted to show cause why it should not intervene.    The inference is, however, that it did have notice of the proceedings for the reason that seven days elapsed from the filing of the petition until the order of the court was made refusing the same, the reasonable presumption being that this time was taken for the purpose of giving notice and hearing the parties interested. At this time the bank had been out of business for five years. The only person acting for and representing it was the said Nicholas Heblich.    When the case came on for trial a few months later he was called as a witness, and testified in detail to matters concerning said certificates of stock, and where and how they were held by the bank.    He admitted the bank held them as collateral, but he did not assert ownership of the bank in the stock.    As we have already said, notice to Heblich was notice to the bank.    It is idle, therefore, to say that the bank did not have notice sufficient to require it to assert whatever rights it claimed in said stock within a reasonable time.    The case was tried under the Act of April 22, 1874, P. L. 109 without a jury.    The court found the facts and entered judgment in favor of the plaintiff for the amount of the unpaid dividends, stating in the opinion that the question of the rights of the Pottsville Bank was not passed on.    Judgment was entered July 2, 1883.    The water company then paid the amount of the judgment and continued to pay Dorathea Roehrig all dividends on said stock as they were declared thereafter.    On August 6, 1883, new certificates of stock were issued to the said Dorathea Roehrig for the shares in controversy, this action by the water company being predicated upon the finding of the court that if she was entitled to the dividends she was also entitled to the certificates of stock.    From the 6th of August, 1883, when the new certificate was issued to Dorathea Roehrig, until March 17, 1903, the appellant made no demand for nor asserted any ownership in this stock.

During this long period of time it remained quiet, failing to assert any rights either for the dividends declared or to the certificates. Certainly these facts bring the case within that familiar rule that if one by his acts or silence or negligence misleads another, or effects a transaction whereby an innocent party suffers, the blamable party must bear the loss. We fail to see how the appellee can be held liable in this action which is predicated upon the supposed negligence or tortious acts of the water company. The evidence clearly shows that the defendant acted in good faith and with business prudence throughout the whole transaction. It is well known in the common experience of corporations that certificates of stock are sometimes lost or destroyed, and when these facts are properly made known to the officers of the company new certificates are issued, generally under the express provisions of the by-laws regulating such matters. It does not appear from the evidence whether the water company had provided for such contingencies in its by-laws, although it was argued that no such power had been granted. It would seem, however, such authority may be presumed from custom acted upon and not disputed for a long period of time. The appellee was justified in relying upon the adjudication of the court, which for all practical purposes decided that Dorathea Roehrig was entitled to said shares of stock unless the bank holding the original certificates should show its superior right within a reasonable time by due course of law. Having lain by and failed to do so it cannot be heard to complain when the rights of innocent third parties have become permanently fixed. It is true that this is an action at law, but in our State the doctrine is firmly established that equity is administered through common law forms. This is a case for the assertion of the maxim vigilantibus non dormientibus jura subveniunt. It is unnecessary to discuss the other questions raised by the assignments.

Judgment affirmed.