## W. C. Jutte, A. Jutte and George W. Theis, Appellants, *v.* A. A. Hutchinson, Thomas B. Hutchinson, the West Elizabeth Bridge Co., and the Union Trust Company, Trustee.

*Corporations—Overissue of stock and bonds—Laches—Estoppel.*

Where a person at the organization of a corporation takes preferred stock for property contributed, knowing that there has been an issue of stock and bonds out of all proportion to the value of the company's property, and takes no action for six years, and not until after it has been ascertained that the company is unable to earn dividends upon its preferred stock, he will be barred by his laches from maintaining a bill in equity for the cancelation of the bonds and of the stock in excess of the actual value of the corporate property.

Argued Nov. 10, 1898. Appeal, No. 210, Oct. T., 1898, by plaintiffs, from decree of C. P. No. 1, Allegheny Co., June T., 1898, No. 4, on bill in equity. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the cancelation of stock and bonds of a corporation.

Demurrer to bill.

The substance of the pleadings is stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*Henry A. Davis*, with him *Wm. M. Galbraith*, for appellants. —The bill is good on any one of the following grounds:

(a) Discovery and obtaining evidence from places not within the state: Act of June 16, 1836, P. L. 789.

(b) The supervision and control of corporations: Act of June 16, 1836, P. L. 789.

(c) Fraud: Act of June 13, 1840, P. L. 671, and Act of April 16, 1845, P. L. 542.

(d) Injunction.

(e) Disputes between stockholders, creditors, etc., of corporations: Act of May 4, 1893, P. L. 29.

(f) Necessity of seeking remedy through and in behalf of the corporation gives equity jurisdiction: Brewer v. Boston Theatre, 104 Mass. 399.

*W. B. Rodgers*, for appellee.—The plaintiffs have been guilty of laches, which is a bar to this bill: Twin Lick Oil Co. v. Marbury, 1 Otto, 587; Gregory v. Patchett, 33 Beav. 595; Shaaber's App., 17 Atl. Rep. 209.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

The plaintiffs in May, 1890, procured a charter for a bridge across the Monongahela river between the boroughs of Elizabeth and West Elizabeth in Allegheny county. W. C. Jutte, the principal stockholder, in April, 1892, contracted with A. A. Hutchinson, one of defendants, to raise funds to build the bridge; Jutte to transfer to him all the stock and property of the company, and a reorganization to be had under the control of Hutchinson, who agreed to have the capital stock increased to not exceeding $80,000 preferred, and common stock to an amount deemed by Hutchinson necessary to complete the bridge; Jutte to receive $15,000 of the preferred stock. Hutchinson then organized a new corporation, built the bridge at a cost of $71,000 and paid for it. The corporation issued preferred stock to the agreed amount, $80,000, also $60,000 common stock and $95,000 in bonds. The $15,000 preferred stock was delivered to Jutte in April, 1893 The entire corporate business was thereafter managed by Hutchinson and others interested with him. No dividends were declared or paid, nor does there seem to have been annual or other meetings of the stockholders.

On March 7, 1898, more than five years after the construction of the bridge, Jutte and others who held part of the $15,000 preferred stock transferred to him, filed this bill against Hutchinson and the other defendants, averring the common and preferred stock as well as the bonds were issued to Hutchinson and the other defendants without consideration passing to the company, except the $71,000 paid for the bridge, that to this amount and no more, they were entitled to receive the securities of the company; further, that all the net profits of the bridge, amounting to $25,000, had been wrongfully received and retained by A. A. Hutchinson. The prayers were for a decree of cancelation of all of the bonds, and all of the stock in excess of the cost of the bridge except the $15,000 preferred stock held by plaintiffs, the consideration for which was labor and money expended on plans and charter.

To this bill defendants demurred because : 1. Plaintiffs could not maintain their bill without notice to and refusal by the corporation to act in behalf of the stockholders. 2. That the bill could not be maintained without payment or tender to A. A. Hutchinson of the $71,000 paid for the construction of the bridge. 3. If plaintiffs have any right of action, it is at law against A. A. Hutchinson upon his contract with Jutte. 4. Because the bill does not set forth a good case in equity. As the demurrer admits the facts averred in the bill, on its face without considering inferences of fact and law, the plaintiffs have a meritorious case; and the learned judge of the court below so finds; but he was of opinion that plaintiffs by their own statement, having had full knowledge of all Hutchinson's operations, of the overissue of stocks and bonds and shared to the extent of $15,000 in the preferred stock they were estopped from complaining. And second, plaintiffs were guilty of gross laches in having remained silent for nearly six years before filing the bill although having full knowledge of the fact of overissue from the beginning.

We hesitate to concur with the court below as to the first reason for sustaining the demurrer. The bill does not admit that plaintiffs knew of or consented to an overissue of stock and bonds, before the actual issue thereof. Jutte by his contract did know that $80,000 of preferred stock would be issued, $15,000 of which was to be transferred to him on account of

land purchased for the approaches to the bridge, for plans and specifications and expenses in procuring the charter; so far as appears from the bill, the corporation received full value for this $15,000 and there was no unlawful and collusive issue of this stock to him. Nor does it follow he knew that Hutchinson contemplated an overissue of stock and bonds to himself. The $80,000 of preferred stock and the issue of common stock at the discretion of Hutchinson may have on a fairly correct estimate of the cost of the bridge, seemed to him necessary for its construction. It did cost outside of the $15,000 for preliminary expenses, $71,000. Neither the statements in the bill nor the probable inferences from them, would warrant us in holding that plaintiffs were estopped by reason of any participation in an unlawful transaction. If they had moved promptly, we think they would have had a right to be heard.

But the second reason for sustaining the demurrer, appears to be well founded. The plaintiffs having in their possession $15,000 of the preferred stock, laid by for nearly six years before moving. No excuse for this delay is suggested in the bill. True, they say that "The manner in which the new charter was procured and the facts as to who subscribed and paid up the stock were entirely unknown to plaintiffs until shortly before they brought suit." That is, plaintiffs did not know that the two Hutchinson's had subscribed for all the new issue, but they knew the large issue, out of all proportion to the cost of the bridge, was an overissue, and had been taken by somebody, and a mere inspection of the public records would have shown by whom it was received. Evidently they did not care to complain of the overissue, if after a time the revenues of the bridge demonstrated its ability to earn dividends on the preferred stock, for then, their $15,000 would be worth its face value. And while not set out in the bill, appellants, in their printed argument, practically admit this was their purpose, for they say:

"The earning capacity of the bridge could not be definitely ascertained until it had been in operation for some years. If it had earned enough to pay the interest on the bonds and six per cent on the stock the plaintiffs would not have been injured and would have had no reason for bringing this suit, and it was only when they found that no reasonable hope could be enter-

tained of its having such earning capacity that they brought this suit."

In other words they said, "If this unlawful act of Hutchinson does not deprive us of dividends we will not complain, if it does, we will." And they stood in this attitude of acquiescence for more than five years. Clearly their delay is not excused by such conduct.

For this reason the decree of the court below is affirmed at costs of appellant.