# Interstate Distributing Company, Appellant, *v.* Connell.

*Corporations — Stockholders—Dissolution—Liquidation—Liquidating trustee.*

1. Where the stockholders of a corporation approve a resolution previously adopted by the directors "to liquidate the affairs of this company and empower the president to do the liquidating," such appointment of the president as liquidating trustee confers upon him no other or greater powers than if the proceeding had been formally begun in the manner provided by the statute, and he had been regularly appointed the liquidating trustee of the corporation.

2. Such a liquidating trustee has no power to enter into an agreement with one of the stockholders who owed the company $260, that if he would purchase additional goods sufficient to bring up the indebtedness to $500 the company would take up the ten shares of stock owned by the stockholder, satisfy the indebtedness of $500 and pay to the stockholder a like amount in cash, and this at a time when there were still creditors of the company to be paid, and it could not then be told what proportion of the corporate assets, if any, would remain for distribution among the stockholders.

3. Where in such a case the claim of the corporation on the book accounts has been assigned in good faith to a third party, and such party has brought suit thereon against the debtor, it is reversible error to permit a certificate to be entered in favor of the defendant for $500 against the plaintiff assignee, inasmuch as a defendant cannot assert a right to set off against a bona fide assignee of a book account of a debt due by or a sum claimed from the assignor.

*Evidence—Foreign laws—Conflict of laws.*

4. The courts of Pennsylvania cannot take judicial cognizance of the laws of other states. They must be affirmatively proven, otherwise they will be presumed to be the same as the law of Pennsylvania.

Argued March 2, 1911. Appeal, No. 4, Feb. T., 1911, by plaintiff, from judgment of C. P. Lycoming Co., Dec. Term, 1909, No. 372, on certificate against the plaintiff in case of Interstate Distributing Company to use of Freiberg & Workum Company v. Cornelius D. Connell and William J. Connell, now or late trading as Connell Brothers. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit on book accounts.

The facts are stated in the opinion of the Superior Court, and the charge which was in part as follows:

What was the financial condition of this corporation on April 21, 1908?

Mr. Connell says that the president of this corporation had always said to him, and did at this meeting, that this corporation was solvent, and that the only reason he ever gave for the corporation being in any sort of financial difficulty was because of the subscribers to stock not paying their subscription.

Now, in that connection it is proper for us to say to you that when a person subscribes to the stock of a corporation, such subscription becomes an asset of the corporation and payment of that subscription can be enforced. Subscribers can be compelled to contribute to the treasury of a corporation the amount of their subscription. Hence this constitutes an asset which Mr. Max Schmidt may have had in his mind, or it may have been that he had in mind the assets and liabilities of the corporation as he then knew them to be. It is testified on the part of the defendants, and, as I say, the minutes of the corporation show, that Max Schmidt was made the liquidating agent.

[Now, whilst the board of directors, without the sanction of the stockholders, could not in themselves liquidate the affairs of the corporation, yet, if they did pass such a resolution, which was subsequently ratified by the stockholders, we say to you that anything that the agent may have done between the time of his being appointed by the directors as liquidating agent and the time of the ratification of his appointment by the stockholders, would bind the corporation.] [4]

Corporations, in matters pertaining to contracts, may be bound by agents, and it is not necessary that every transaction of a corporation should be spread upon the minutes of the stockholders or of the directors. As long as an agent of a corporation acts within the scope of his

authority, as given to him by the corporation, his acts bind the corporation, if it is such a matter as the corporation itself could lawfully do.

Now, this resolution to which I have referred was passed on April 21, 1908, and at that time the defendants knew there was a bill due from them to the corporation for liquors which they had previously purchased, and Cornelius D. Connell says that there was a conversation had between himself and Mr. Max Schmidt, president and liquidating agent of this company, whereby it was agreed that Mr. Connell should be permitted to purchase goods which, in addition to those he had already purchased, would amount to the sum of $500. Mr. Connell further claims that Mr. Schmidt agreed in addition that he would pay Connell Brothers the balance of this stock held by them in money. In other words, that he would allow defendants a credit for these two bills of goods on account of this stock and that he would pay them the balance of their stock in money.

[Now, if this company at that time was solvent, if it was able to pay its debts, then we say to you that this would be a perfectly legitimate contract, and that Max Schmidt, as the liquidating officer of this company, could bind this corporation by such a contract. In other words, he could purchase and liquidate outstanding obligations due from this company to its stockholders, or due by this company to any other party, and could lawfully bind this corporation by the terms of such a contract.] [5]

Now, it is not denied here, as I understand the testimony in this case, by Mr. Schmidt, that this agreement was entered into by him and one of the defendants. He does deny that he ever said that this corporation was solvent, and he testifies here that the books of the company show that it was not solvent. The books of the company have not been offered in evidence, but Max Schmidt says the assets of the corporation, that is, outstanding accounts, merchandise and fixtures, amounted to the sum of $9,729.69. He says included in that are doubtful and

uncollectible claims.   He has not shown an itemized statement showing of what they are made up; he sums them up as amounting to $3,554.22, leaving a balance of available assets, according to his statement, of $6,175.34. Then he claims that there were duebills probably amounting to $6,669.08; due for rent, $291; due to stockholders, that is, persons who had taken stock in this corporation, $11,000, making a total indebtedness of the corporation of $18,706.81 as its liabilities.   Now, gentlemen, that is his statement at this time.

The difference between this statement and the one he had made at some other time is that he now gives figures, while at another time, according to the testimony, there were no figures given, and the question for you to determine is when he gave the actual condition of this corporation.

[If it be true, as he stated to Mr. Connell at the time of this transaction, that the company was solvent, then this defense is a good defense and the defendants would be entitled to recover on this contract, which it is alleged was entered into at that time.] [6]

Of course, if it be true that this was an insolvent corporation at the time of the alleged contract between Max Schmidt and the Connell Brothers, why then this defense would not be a good one.

Plaintiff presented these points:

1. Under all the evidence in this case your verdict must be for the plaintiff in the sum of $507.95, with interest on $240.73 from April 23, 1908, and on $267.22 from June 9, 1908.   *Answer:* This point is refused. [7]

2. It not having been shown that the board of directors of the Interstate Distributing Company ever authorized Max Schmidt to make the alleged agreement with Connell Brothers, whereby the said Connell Brothers were to receive the goods, the value of which is sued for in this case, by way of settlement for any fraud or misrepresentation which may have been practiced by them in the solicitation of the subscription to the stock of the said Interstate Distributing Company, plaintiff is entitled to recover of

the defendant the value of the goods which they admit were delivered to them by the Interstate Distributing Company. *Answer:* This point is refused. [8]

3. The uncontradicted evidence in this case being that the Interstate Distributing Company was insolvent on the day of the alleged agreement made between Max Schmidt and C. D. Connell, for the purchase of the stock of Connell Brothers, then held by them in said company, as testified to by C. D. Connell, such an agreement is void and cannot be enforced as a defense to this action. *Answer:* This is refused. We leave the question of the solvency of this company for the jury to determine.. [9]

Defendant's points were as follows:

3. That Max Schmidt, as president, general manager and liquidating trustee of the Interstate Distributing Company, had the right and power in this case to compromise Connell Brothers' claim, if said company was solvent at the time, and agree to allow the goods ordered by Connell Brothers on the two different occasions, sued for by the plaintiff in this case, to apply on account of a return of the cash paid by them for the capital stock of said company. *Answer:* This is affirmed. [10]

4. That if the jury believe that Max Schmidt, the president, general manager and liquidating trustee of the Interstate Distributing Company, made the agreement with Connell Brothers, such as defendants testify he did make, and the company was solvent, his act and agreement bound the said company. *Answer:* This is affirmed. [11]

7. That if the jury in this case believe that such a contract was made as testified to by defendants, the stock having been tendered to the plaintiff in open court, the jury may certify any amount that they find to be due by the plaintiff to the defendants. *Answer:* We answer this point by saying that the defendants have pleaded set-off in this case, and if the jury find that there is a sum due to the defendants over and above an amount sufficient to liquidate this, then the jury may certify the amount which they find to be due to the defendants. [12]

If you find for the plaintiff, you will find for the amount of his claim, with interest from the dates I have referred to.

[If you find for the defendants, you can either return a verdict generally for the defendants, or you may find for the defendants and certify the amount of the set-off which they claim is due from this company to them over and above the amount of the claim presented by the plaintiff.] [13]

Certificate for defendants for $500.53. Defendants appealed.

*Errors assigned* among others were (4–13) above instructions, quoting them.

*M. C. Rhone*, with him *A. R. Jackson*, for appellant.— If Max Schmidt did make the bargain with C. D. Connell, which Connell says he did make, even though the company was then solvent, and even though the law of New York did not forbid such transactions, this contract is void, for the reason that Max Schmidt had no power to make it: Allegheny County Workhouse v. Moore, 95 Pa. 408.

In the absence of fraud the jury cannot return a certificate of indebtedness against a use plaintiff and thereby charge a use plaintiff with the debt of the assignor: Everson v. Fry, 72 Pa. 326; Henderson v. Lewis, 9 S. & R. 379; Tagg v. Bowman, 99 Pa. 376.

*Wm. Russell Deemeer*, for appellees.—Foreign laws must be proved: Evans v. Cleary, 125 Pa. 204; Pairpoint Mfg. Co. v. Philadelphia Optical & Watch Co., 161 Pa. 17.

The contract was valid: Dock v. Cordage Co., 167 Pa. 370; Coleman v. Oil Co., 51 Pa. 74; Benevolent Order of Active Workers v. Sanders, 28 W. N. C. 321, and Lowry v. Philadelphia Optical & Watch Co., 161 Pa. 123; Brown v. Camden & Atl. R. R. Co., 83 Pa. 316.

OPINION BY HEAD, J., April 17, 1911:

The plaintiff's case was the ordinary one to recover the price of goods sold and delivered. There was no denial of

the receipt of the goods; no contention as to the correctness of the prices charged. The plaintiff's case prima facie was therefore complete.

The defendants had subscribed and paid for ten shares of the capital stock of The Interstate Distributing Company, the legal plaintiff, and one of them, C. D. Connell, was elected one of its directors and occupied that position at the time of the alleged transaction or arrangement on which the defense to this action is based. It appears that as early as April 21, 1908, the situation of the corporation was such that at a meeting of its directors, held on that day, a resolution was adopted to put the corporation into liquidation. The motion to that effect was made by Director Connell, one of the defendants. It was there further agreed "to put Mr. Schmidt (the president and general manager) in complete charge of the affairs and manage the same until the affairs of the company are fully settled." A meeting of the stockholders of the company was called for April 28, and the minutes thereof show that there was presented to the meeting the resolution passed by the directors "to liquidate the affairs of this company and empower Mr. Max Schmidt, president, to do the liquidating." A motion to ratify that action of the board was unanimously adopted.

It further appears that prior to the board meeting of April 21 just referred to, the defendants had purchased a bill of goods from the corporation and were indebted to it for the price thereof, about $260. Director Connell had with him a memorandum of this indebtedness, and after the meeting he testifies to a conversation with Schmidt in which the latter agreed that if the defendants would purchase additional goods sufficient to bring their indebtedness up to $500, the company would take up the ten shares of the stock owned by the defendants, satisfy the indebtedness of $500 and pay to the defendants a like amount in cash. In other words, the liquidating officer of the corporation there undertook, with one of its directors, to take up his shares of stock at their full par

value even though there were still creditors of the corporation to be paid and it could not then be told what proportion of the corporate assets, if any, would remain for distribution among the stockholders.

The corporation was organized under the laws of the state of New York. It was pressed upon us in the argument at bar and in the printed brief of the appellee that such a transaction was forbidden by the laws of the state of New York, but it does not appear in the record that such laws were pleaded or offered in evidence. It has often been held that our courts cannot take judicial cognizance of the laws of other states, and that it is incumbent on a party litigant, who asserts that the rights or obligations of the parties are to be determined according to the laws of another state, to make affirmative proof of such laws. Otherwise they will be presumed to be the same as the law of Pennsylvania. We must therefore view the transaction in the light of our own legislation and decisions.

Whilst our state law provides a method for the dissolution of a corporation and the winding up of its affairs, we may concede that it is not, in all cases, absolutely necessary that such method be followed. We may even go so far as to assume, as contended by the appellee, under the authority of Pottsville Bank v. Minersville Water Co., 211 Pa. 566, that, under the facts appearing in this record, Schmidt was invested with the powers of a liquidating trustee to wind up the company's affairs, or, in the language of the minutes of the stockholders' meeting, "to do the liquidating." In no aspect of the case, as we view it, could his informal appointment as such trustee confer upon him other or greater powers than if the proceeding to dissolve had been formally begun in the manner provided by the statute and he had been regularly appointed the liquidating trustee of the corporation.

It is true that the capital stock of a corporation is a part of its liabilities and that, in a sense, the owners of that stock are creditors of the corporation with the right

to take its assets and divide them among themselves in extinguishment of the liability evidenced by the stock. It is but to state elementary law, however, to say that this right is neither absolute nor unqualified, and that it cannot be asserted until the process of liquidation has advanced to a certain stage. The rights of creditors, using that word in its ordinary and general sense, are first of all paramount, and their obligations must be discharged in full before the right of any stockholder to any portion of the corporate assets can be considered. Both Schmidt and Connell, the parties to the alleged arrangement of April 21, upon which the defense rests, were acting in a fiduciary capacity. They had both taken part in the action which started the process of liquidation. They were both bound to see first of all that the corporate assets were applied to the payment of the debts of the corporation and that thereafter what was left was to be divided equally among all of the stockholders without giving to one any preference over the others. It must follow, therefore, that any attempt on the part of a director and the liquidating trustee to agree, on the very day on which it was determined to put the corporation into liquidation, that the stock of a particular stockholder should be paid for in full by the use of the money or property of the corporation, was something they had neither the right nor the power to do.

At the trial the defendants testified to the arrangement above indicated. They further testified to declarations made by Schmidt, at or about that time, that he believed the corporation to be solvent and that there would be money enough not only to pay its debts but to return to its stockholders the full amount of the capital they had respectively contributed. Although it was shown by an actual statement of the affairs of the company, taken from its books, that the corporation was insolvent, the whole matter was submitted by the learned trial court to the jury and they were permitted to render a verdict, upon which judgment was afterwards entered, not only

relieving the defendants from the payment of their conceded indebtedness but awarding to them a certificate of balance for the $500 in cash which, as they allege, the liquidating trustee promised to pay for the surrender of their stock. It is true the books themselves of the corporation were not produced by the plaintiff, nor were they demanded by the defendants. The accuracy of the statement furnished from them was in no way assailed, although, as stated, there was evidence of declarations made by Schmidt as to his belief that the company would prove to be solvent.

We do not think the controlling question in this case turns upon the solvency or insolvency of the corporation on April 21, 1908. That was a question that could only be finally determined by the liquidation of the business of the company. The book assets of either an individual or corporation, at the moment when liquidation begins, often suffer from an unexpected and disappointing shrinkage in values, and it might gravely imperil the rights of creditors or other stockholders to permit a process of liquidation to begin by an arrangement of the character of that relied upon by the defendants.

It is not necessary to affirm or deny the broad proposition urged upon us by the appellee that it is not unlawful for a corporation to buy its own stock. Certainly there is nothing in the case of Coleman v. The Columbia Oil Co., 51 Pa. 74, relied on by the appellee to support the conclusion that the liquidating trustee, under the conditions here present, was invested with any authority to make an arrangement like the one in question. If vigilant directors of a corporation in process of liquidation could by such an arrangement secure to themselves payment in full of the capital they had contributed, the creditors and remaining stockholders would be placed in a precarious situation.

This action was brought by the Freiberg & Workum Company, to which company the claim against the defendants appears to have been assigned before suit brought.

There is not a line in the testimony attacking the validity or good faith of that assignment. If the judgment entered in this case can stand, the defendants have not only defeated any right of recovery against them, but have themselves obtained a judgment for a considerable sum of money against a party who was never indebted to them. In a word, the defendants have successfully asserted a right to set off against a bona fide assignee of a book account a debt due by or sum claimed from the assignor. In Henderson v. Lewis, 9 S. & R. 379, Mr. Justice GIBSON said: "The object in permitting debts to be set off, being, as I have said, to prevent circuity of actions, it of course can be allowed only where the parties have a mutual right to sue each other." In Everson v. Fry, 72 Pa. 326, Mr. Justice SHARSWOOD said: "It is to be observed that a set-off is a counterclaim, and is to be regarded in all respects as if it was a separate action by the defendant against the plaintiff." In Blair v. Mathiott, 46 Pa. 262, it was held that an obligor in a bond cannot defalcate against the assignee of an assignee of a bond, a claim or set-off, which he holds against the first assignee. In speaking of such an attempt, Mr. Justice THOMPSON said: "That cannot be done at law under the statute, for if it could, and the claim of the obligor against the first assignee should be greater than the assigned debt, he would be entitled to a certificate of balance against one who never owed him anything. This would not do." This case was followed in Downey v. Tharp, 63 Pa. 322.

It appears to us, therefore, that in both of the important respects already indicated the case was tried in the court below on an erroneous theory. Had a verdict been directed for the plaintiff liquidating the amount of its claim, subject to the right of the court to thereafter render judgment for the defendants, we could dispose of the entire question by directing a judgment to be entered on the verdict, but as we have nothing upon which our final judgment could rest, we must send the case back to be retried in accordance with the principles herein indicated.

Judgment reversed and a venire facias de novo awarded.

### SUR MOTION TO MODIFY JUDGMENT

Although the plaintiff easily made out a prima facie case, yet its claim was for the price of goods sold and delivered, with interest thereon.   The ascertainment of the exact amount due was not a question of law either for the learned trial court or for us, but necessarily required the verdict of a jury.   Had the jury been instructed that the defense set up was unavailing and then been permitted to find for the plaintiff, liquidating the amount of its claim, we would have had the basis for a final judgment.

This was what we meant to say in the concluding paragraph of the opinion.   With the record as it is such judgment cannot be entered here, and the motion therefore must be denied.

The motion for a reargument is refused.

*Per Curiam.*