HARRISON J. BARRETT, trustee, *vs.* W. A. WEBSTER LUMBER CO. & others.

Middlesex.    March 3, 1931. — April 6, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* Suit by minority stockholders. *Corporation,* Purchase by corporation of its own stock.

A Massachusetts corporation, unless forbidden by statute or by its agreement of association or by-laws, if acting in good faith and not in prejudice of the rights of creditors, may purchase its own stock.

The general manager of a Massachusetts corporation, whose stock was of two classes, one preferred as to assets in case of liquidation and the other common, purchased, partly for cash and partly for his notes, common stock of the corporation. Subsequently he left the corporation's employ and, by an agreement entered into in good faith and approved by vote of the stockholders, the corporation purchased such stock from him, giving him its notes for the amount of cash he had paid for it and cancelling the notes he had given. At that time the corporation's books showed a substantial surplus and the fair cash value of its assets exceeded its liabilities exclusive of its capital stock, and its liabilities including its capital stock exceeded the fair value of its assets by more than the par value of the shares of common stock returned to the company by him; and, although it was unable then to pay its current liabilities as they became due, nevertheless, if it had been liquidated at that time all its debts and its entire outstanding preferred stock would have been paid in full. Later, through causes not connected with such transaction, the corporation came into financial difficulties. Upon appeal by the plaintiff from a final decree dismissing a suit by a preferred stockholder of the corporation to enjoin payment of its notes to the former general manager and to enforce payment of the notes which it had surrendered to him, it was *held,* that

(1) The repurchase of the stock by the corporation from the general manager was not illegal;

(2) A contention by the plaintiff that a corporation cannot purchase its own stock except out of surplus profits could not be sustained;

(3) Upon the above facts it did not appear that when such stock was repurchased by the corporation any rights of the plaintiff were injuriously affected, and the bill properly was dismissed.

It *was stated* that the decision in the suit above described was not intended as an intimation that stockholders and officers of a corporation may, even acting in good faith, purchase its stock if it is proved that such purchase will result in loss to its creditors or to its stockholders, either preferred or common.

BILL IN EQUITY, filed in the Superior Court on August 30, 1929, and afterwards amended, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. There were no exceptions to the master's report.

The suit was heard on the master's report by *Gray*, J., who, having found and ruled as stated in the opinion, ordered a final decree dismissing the bill. Upon entry of such decree, the plaintiff appealed.

*J. A. Lyons*, for the plaintiff.

*P. R. Ammidon*, (*G. S. Ryan* with him,) for the defendants.

CROSBY, J. This is a suit in equity, brought by a holder of preferred stock in the defendant company, by which the plaintiff seeks to restrain the defendant Henry from prosecuting certain proceedings, now pending, to enforce the payment of certain notes which he received for common stock issued by the defendant company to him; and to compel him to surrender said notes for cancellation and to pay over to the company or its trustees such sums as were paid by the company to him for such stock. The case, together with the said proceedings brought by Henry — a suit in equity and an action at law — was referred to a member of the bar as master and auditor. The bill is brought in behalf of the plaintiff and all other preferred stockholders of the defendant company who may choose to join. The evidence is not reported; accordingly, the findings of the master-auditor are conclusive unless mutually inconsistent or plainly wrong.

The amended bill of complaint alleges in paragraph 21 that the plaintiff at various times had requested the defendant company, its officers and directors, and the other defendants to seek to recover from the defendant Henry the moneys due on the promissory notes surrendered, which they have neglected and refused to do. All the defendants in their answers expressly admit the foregoing allegation. In these circumstances the right of the plaintiff to maintain the bill is not now open to question. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 518. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 244. See *Calkins* v. *Wire Hardware Co.* 267 Mass. 52.

The action at law was brought by Henry against the lumber company to recover on two promissory notes, each in the sum of $2,400. The bill in equity, brought by Henry against the lumber company and the defendants Webster and Cussen, alleged the delivery to him by the corporation of four promissory notes amounting to $9,555.82; that the corporation had transferred all its assets to Webster and Cussen and thereby rendered itself unable to meet said notes at maturity; that they are distributing the assets of the company and refuse to pay said notes or to retain sufficient assets to pay the same at maturity; and prayed for an injunction restraining the distribution of assets until the notes were paid. The master-auditor found that all the notes were duly executed, that their execution was authorized by the corporation, that they were not obtained by fraudulent representations, "and that in so far as it is a question of fact they were given for consideration." No appeals or exceptions were taken in these suits brought by Henry from a finding and a decree in favor of the plaintiff. It is the contention of the plaintiff in the present suit that the issuance of the notes in payment of the capital stock purchased by the company was a violation of the rights of the plaintiff as a preferred stockholder.

It was provided in the agreement of association that "In the event of liquidation, the net proceeds of the assets of the Company shall be first applied to the payment to the holders of the preferred stock of the sum of one hundred

and five ($105.) dollars per share and accrued and unpaid dividends thereof.   The balance remaining thereafter shall be divided among the holders of the common shares in proportion to their holdings."   The defendant Henry was employed by the company as general manager.   It was suggested that he purchase some stock in the company, and on or about November 1, 1923, he subscribed for one hundred fifty shares of the common stock; the total price was $35,887.50, payment for which was made as follows: $3,000 in cash, a note for $8,887.50, a note for $8,000, and two notes for $8,000 each, which were discounted at banks and the proceeds thereof paid to the company. Henry also purchased from the company at about the same time thirty-seven shares of the common stock of the Webster Lumber Company of Little River, Florida, and gave a note therefor for $3,700.   At the end of January, 1927, he left the employ of the company.   About that time it was agreed that he should turn his stock over to the company, and in exchange the company would cancel his notes and pay him the cash he had invested, with interest.   This agreement was duly approved by vote of the stockholders, and payment to Henry was made by the issuance of notes. These notes are the subject of the suits now pending which the plaintiff in this suit seeks to restrain.   When the company purchased this stock its books showed a substantial surplus.   The notes were all made by the company and were signed in its behalf by its treasurer who had full authority to execute the same in behalf of the company.   They were not obtained by Henry by means of false or fraudulent representations, and no part of them has been paid. At the time they were given, it is found that the fair cash value of the assets of the company exceeded its liabilities exclusive of its capital stock.   It is further found that its liabilities including its capital stock exceeded the fair value of its assets by more than $15,000, which is the par value of the one hundred fifty shares of common stock returned to the company by Henry; but, if the company had been liquidated at that time all its debts and its entire out-

standing preferred stock would have been paid in full, although at that time the company was unable to pay its current liabilities as they became due.

In October, 1928, owing to the pressure of creditors, the company sold its good will, trade name and tangible property to one Friend. He organized a corporation, which later bought the assets from him and issued stock in payment therefor. This stock was afterwards sold by Friend to the defendant Webster and his son W. A. Webster, Jr. In November following, the defendant company conveyed its notes and accounts receivable, marketable securities and all its other assets to the defendants William A. Webster, Sr. and Cussen to settle with creditors at seventy-five cents on the dollar. Henry did not assent to this conveyance nor agree to take seventy-five per cent of his claim in settlement, and, although he never received any payment, his name appeared on the schedule of creditors. Dividends on the preferred stock were declared and paid in accordance with the foregoing provisions up to and including the dividend payable July 1, 1928. The question presented for decision is whether upon the findings the purchase of Henry's stock by the notes of the defendant company at the time the company's assets were not sufficient to pay its liabilities including its capital stock is invalid, and precludes him from recovery on the notes and renders him liable on his notes payable to the company.

The case came on for hearing before a judge of the Superior Court, who ruled that under the laws of this Commonwealth a corporation may purchase its capital stock, and that the purchase from Henry and the giving of notes of the corporation in payment therefor were valid as to the plaintiff unless rights of preferred stockholders were thereby violated; that the contention of the plaintiff that Henry never was a stockholder because of the violation of G. L. c. 156, § 16, prohibiting the issue of stock for notes of the purchaser, is not presented by the pleadings since the bill alleges and the answers admit that Henry was a stockholder; that, "In view of the findings of the master that Henry furnished full consideration for the notes given for

his stock, in so far as it is a question of fact, and that after the notes were given the corporation had a surplus above its indebtedness exclusive of its stock liability more than sufficient to retire its preferred stock," the purchase of the stock from Henry constituted no fraud as to the preferred stockholders and did not violate their rights; that the loss to the preferred stockholders was due not to the purchase of the stock from Henry, but to losses which the corporation had suffered since that purchase and in no way resulting from it. The judge further ruled that those losses were so large that, even if Henry restored to the corporation all he received from the sale of the stock, it does not appear that the plaintiff would benefit thereby because on the findings of the master all the corporation's assets might be required to pay its creditors. An interlocutory decree was entered overruling the objections of the defendant Henry to the master's report and confirming the same, and a final decree was entered dismissing the bill with costs, from which decrees the plaintiff appealed.

It has long been settled in this Commonwealth that a Massachusetts corporation, unless forbidden by statute, if acting in good faith, may purchase its own stock. *Dupee* v. *Boston Water Power Co.* 114 Mass. 37. *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 152. *Lindsay* v. *Arlington Co-operative Association*, 186 Mass. 371, 374. *Leonard* v. *Draper*, 187 Mass. 536, 538. *Tapper* v. *Boston Chamber of Commerce*, 235 Mass. 209, 218. *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99, 102. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 108. The English courts have held that a corporation, unless expressly authorized to do so, cannot purchase its own stock. *Trevor* v. *Whitworth*, 12 App. Cas. 409. In this country some of the States have followed the English rule. *Crandall* v. *Lincoln*, 52 Conn. 73. But the great weight of authority holds that a corporation may buy its own stock if the purchase is made in good faith and does not prejudice the rights of creditors. *In re Fechheimer Fishel Co.* 212 Fed. Rep. 357. Whether this stock held by Henry should be purchased by the corporation and upon what terms, as well as whether dividends

upon it should be declared, rested in the sound discretion of the directors. The purchase of the shares by the corporation did not necessarily amount to a reduction of its capital stock as the shares so purchased or other shares in place thereof could have been sold and transferred to another purchaser. *Leonard* v. *Draper,* 187 Mass. 536, 537–538. *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99, 103.

As the findings show that at the time the notes were given the fair value of the assets of the company exceeded its liabilities exclusive of its capital stock, and that if the company had been liquidated at that time all its debts and its entire outstanding preferred stock could have been paid in full, we are of opinion that the purchase of the stock held by Henry was not illegal. In the event of liquidation at that time the only persons who could have suffered a loss were holders of the common stock who authorized the purchase of Henry's stock. The decline in the financial standing of the corporation due to loss of business, depreciation of assets or other causes, long after the stock was purchased, could not reasonably have been anticipated. It is apparent, as the trial judge ruled, that loss to the preferred stockholders was not the result of the purchase of the stock from Henry, but was due to losses suffered by the corporation since that time and in no way resulting from such purchase. The contention of the plaintiff that a corporation cannot purchase its own stock except out of surplus profits cannot be sustained. In many of the cases cited by him the facts are plainly distinguishable from those appearing in the case at bar. So far as other cases are contrary to what is here decided, we do not follow them. In some jurisdictions the right of a corporation to purchase its own stock is regulated by statute. In some jurisdictions a similar rule has been laid down by judicial decision. *Crandall* v. *Lincoln, supra. First National Bank of Peoria* v. *Peoria Watch Co.* 191 Ill. 128. See *Keith* v. *Kilmer,* 261 Fed. Rep. 733. The case of *Leland* v. *Hayden,* 102 Mass. 542, cited by the plaintiff, does not hold that the purchase of its stock by a corporation can be made only out of surplus earnings. The master expressly found that there was no

actual fraud in the transaction involved in the present case; nor do the findings warrant the conclusion that it was constructively fraudulent and unlawful. We do not mean to intimate in coming to this conclusion that stockholders and officers of a corporation may, even acting in good faith, purchase its stock if it is proved that such purchase will result in loss to its creditors or to its stockholders, either preferred or common. It is sufficient to say that upon the findings it does not appear that when this stock was purchased any rights of the plaintiff were injuriously affected. *Lindsay* v. *Arlington Co-operative Association, supra.* *Leonard* v. *Draper, supra.* *Rasmussen* v. *Schweizer,* 194 Wis. 362. *Koeppler* v. *Crocker Chair Co.* 200 Wis. 476. As ruled by the trial judge, even if the transaction were rescinded, and Henry returned to the corporation the amount he received from the sale of his stock to the corporation, the plaintiff would not be benefited as it does not appear from the findings that the entire assets might not be required to pay the debts of the corporation.

The entry must be

> *Interlocutory and final decrees*
> *affirmed with costs.*