EDWIN J. SCRIGGINS *vs.* THOMAS DALBY COMPANY.

SAME *vs.* SAME.

THE UNION MARKET NATIONAL BANK OF WATERTOWN *vs.* EDWIN J. SCRIGGINS & others.

Middlesex.     March 13, 1933. — April 29, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Corporation,* Purchase by corporation of its own stock.  *Contract,* Validity.  *Bills and Notes,* Validity.

A purchase by a corporation of its own stock, made in good faith and without prejudice to creditors or stockholders and not forbidden by statute, is valid even if it is not made out of surplus.

A purchase by a corporation of its own stock does not constitute a reduction of its capital stock, even though not made out of surplus, if the stock purchased is not retired but is kept for sale or transfer to another.

The mere fact that no surplus is available for a purchase by a corporation of its own stock does not show as matter of law that the purchase is prejudicial to creditors of the corporation.

Where a corporation, at the time when, in good faith, it made a contract for the purchase by it of its own stock, at the time when it gave notes to the seller on account of the purchase price of the stock, in accordance with the provisions of such contract, at the time when the notes matured and at the time of the commencement of an action thereon,

had ample assets with which to pay all its creditors, the fact, that at the time of trial of the action the corporation was unable to pay all its creditors in full and could not then have purchased its own stock without prejudice to creditors, did not affect the enforceability of the notes, even assuming that it was an implied term of the contract that it would not be carried out if at the times fixed for performance the corporation were insolvent or performance would render it so.

Two ACTIONS OF CONTRACT. Writs dated September 23, 1931, and March 2, 1932, respectively. Also a

BILL IN EQUITY, filed in the Superior Court on October 17, 1932, described in the opinion.

The actions at law and the suit in equity were heard together in the Superior Court by *Gray*, J. Material findings by him are stated in the opinion. He found for the plaintiff in the sum of $4,269.33 in the first action and in the sum of $4,163.33 in the second action. The defendant alleged exceptions. By order of the judge, a final decree dismissing the bill was entered in the suit in equity. The plaintiff appealed.

*I. Bernstein*, (*V. C. Brink* with him,) for The Union Market National Bank of Watertown.

*B. L. Hill*, for Scriggins and another.

FIELD, J. These are two actions at law and a suit in equity which were tried together in the Superior Court. Each action at law is in contract on a promissory note and was brought by the payee thereof, Edwin J. Scriggins, against the alleged maker, Thomas Dalby Company, a Massachusetts corporation, herein referred to as the corporation. One action was commenced September 23, 1931, the other March 2, 1932. The judge made specific findings of fact and a general finding for the plaintiff in each action. The judge in each action refused to rule as requested by the defendant that on all the evidence the finding should be for the defendant, and the defendant excepted. All the evidence material to this question is reported.

The suit in equity was begun by a bill of complaint filed October 17, 1932, by The Union Market National Bank of Watertown, a creditor of the corporation, herein referred to as the bank, against the parties to the actions at law and

another person to enjoin the enforcement of an alleged fraudulent and illegal contract between said parties to the actions at law in pursuance of which the notes sued on in those actions were given, and particularly to enjoin the prosecution of the actions at law. The judge made findings of fact and rulings of law and ordered the entry of a decree dismissing the bill. Thereafter a decree was entered dismissing the bill, and the plaintiff appealed. On the request of the plaintiff for a report of material facts the judge reported the facts previously found by him and also the fact that at all times in 1932 the corporation was indebted in a substantial amount to creditors other than the bank. The judge ruled that requests for a report of facts to the effect that at all material times the excess of assets over liabilities of the corporation was less than the par value of the outstanding capital stock were "not material" because this is "a suit by a creditor which claims that its interests were adversely affected by the contract with the defendant."

The facts found by the judge, both in the actions at law and in the suit in equity, include the following: By a contract made March 21, 1928, the plaintiff in the actions at law agreed to sell and the corporation to buy two hundred and forty shares of stock in the corporation for the sum of $25,000. The contract was duly authorized by the board of directors of the corporation. By this contract it was agreed that the stock should be "endorsed and deposited" with the bank, that the corporation should pay for the stock from time to time by cash or notes and that upon a payment of cash or a payment on a note shares of stock so paid for should be "released from escrow and delivered" to the corporation. From time to time payments were made in accordance with the contract and stock was delivered to the corporation. On February 15, 1930, a note for one year for $4,000 was given and on February 16, 1931, a renewal note for six months, and on February 16, 1931, another note for $4,000 was given. These notes have not been paid and no stock has been delivered in exchange therefor. They are the notes upon which the actions at law are brought. The "contract was entered into by both parties in good

faith and without any expectation that creditors would be adversely affected thereby. . . . the corporation was solvent at the time the contract was made. . . . if the corporation had been liquidated at the time the contract was signed, it would have yielded more than twice the amount of all claims of creditors. . . . the rights of creditors were not prejudiced by the making of the contract. From the time of the contract to the date of the trial, the financial condition of the corporation became rather steadily worse. This was not due, however, to the contract, nor to any fault on the part of Scriggins, and it could not have been reasonably anticipated at the time the contract was signed. . . . the corporation continued to be solvent at least until March 16, 1932 . . . both at the times the notes in dispute were given and when they fell due, the rights of creditors were not prejudiced by the giving of the notes, and would not have been prejudiced by the payment of the notes because ample assets remained to pay all creditors. The same is true as of the dates suits were commenced on said notes. . . . therefore . . .. at the time the agreement was made the corporation was able to pay its current liabilities as they became due and without the necessity of liquidation. . . . both [at the time for purchase and payment] . . . and on the dates of the two suits on the notes herein referred to, the corporation was solvent and could buy the stock without injuring the rights of creditors. . . . therefore . . . the contract was valid and enforceable when the suits were brought . . . . at the time of the trial, the corporation was unable to pay its current liabilities as they fell due, and . . . if it were liquidated as of that date it is doubtful if creditors could be paid in full. . . . as of that date . . . the corporation was unable to purchase its corporate stock without prejudicing the rights of creditors."

The bank is a creditor of the corporation for money lent to the corporation after the contract was made between the plaintiff in the law actions and the corporation. And on June 28, 1932, the bank took a mortgage on the corporation's real estate as security for the corporation's indebtedness. The bank "knew of the Scriggins agreement when

it first commenced to loan money to the corporation . . . [and] acted as trustee under the agreement from the beginning, and . . . its attorney examined the agreement before it was executed. Different officers of the . . . [bank] acted for it in the matter relating to the agreement and in the making of the loans to the corporation."

First. The bill in equity was dismissed rightly.

1. The principal contention of the bank in this suit is that the contract between the plaintiff in the actions at law and the corporation for the purchase by the corporation of its own stock is not enforceable because such purchase "by a corporation, except out of surplus, amounts to an impairment of its capital and as a matter of law prejudices and impairs the rights of creditors." While the material facts reported do not show that this stock could not have been purchased out of surplus, the refusal of the judge to report facts bearing on the question because not material presents this question for decision. But the contention cannot be sustained.

It is settled in this Commonwealth that a corporation, though not expressly authorized, if not forbidden by statute, may purchase shares of its own stock, and that an agreement to do this is enforceable, subject, at least, to the limitations that the purchase must be made in good faith and without prejudice to creditors and stockholders. *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99, 102. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 307–309, and cases cited. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376. No decision here has added the further limitation, independent of these limitations, that such a purchase can be made legally only out of surplus. Indeed the case of *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, indicates that there is no such limitation upon the power of a corporation where the purchase by it of its own stock is not in conflict with any of the limitations above stated. In that case it was said that the "contention of the plaintiff that a corporation cannot purchase its own stock except out of surplus profits cannot be sustained" (page 308), and the plaintiff in that case, a holder of preferred

stock in a corporation, was denied relief against the collection of notes given by the corporation for the purchase of some of its own common stock, though at the time of the purchase the liabilities of the corporation, including its capital stock, exceeded the fair value of its assets, since it did not appear that at the time of the purchase the preferred stockholder was injuriously affected thereby. The necessary inference is that a contract of a corporation to purchase its own stock, when surplus profits are not available for the purpose, unless prohibited by statute, is not *ultra vires,* or on any other principle inherently unenforceable, though it may be rendered unenforceable by special circumstances. This conclusion is in accord with the principle that an agreement to repurchase or redeem stock constituting a part of the contract by which the stock is issued need not be limited to repurchase or redemption out of surplus. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376. Compare *Lindsay* v. *Arlington Co-operative Association,* 186 Mass. 371, 375. The cases in other jurisdictions are in conflict. See, in support of the conclusion here reached, *Rasmussen* v. *Schweizer,* 194 Wis. 362, 366; *Koeppler* v. *Crocker Chair Co.* 200 Wis. 476, 480–481. And some of the cases which reach the contrary conclusion rest upon statutes making a purchase by a corporation of its own stock, except out of surplus, unlawful. See, for example, *Topken, Loring & Schwartz, Inc.* v. *Schwartz,* 249 N. Y. 206. So far as other cases are contrary to what is here decided we do not follow them.

The contract for the purchase by the corporation of its own stock from the plaintiff in the actions at law was not prohibited by any statute unless such purchase was a reduction of the capital stock of the corporation in violation of the statutory provisions regulating such reductions. G. L. (Ter. Ed.) c. 156, §§ 41, 45. But it is not shown that the purchase in the present case amounted to such a reduction. It does not appear that there was any attempt or intention to retire the stock purchased — whatever would be the effect of such attempt or intention. And ordinarily a purchase by a corporation of its own stock is not a reduction

of its capital stock when the stock purchased is "kept in existence, ready to be sold and transferred to another party." *Leonard* v. *Draper,* 187 Mass. 536, 537–538. *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99, 103. See also *Commonwealth* v. *Boston & Albany Railroad,* 142 Mass. 146, 155. Furthermore, such a purchase, in other respects proper, is not a reduction of capital stock by reason of the fact that it is not made out of surplus. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 308.

The report of material facts shows no special circumstance, existing before the trial of the actions at law, which rendered the contract for the purchase by the corporation of its own stock unenforceable. On the contrary, there were findings that the contract was made in good faith, and that, prior to the trial of the actions at law, the transaction was not prejudicial to creditors. No facts are reported which are inconsistent with these conclusions. And, for reasons already indicated, prejudice to creditors would not have followed as matter of law from the fact that no surplus was available for the purchase of the stock if on other facts found creditors would not be prejudiced. In the absence of proof that the bank, a creditor of the corporation, was prejudiced by the contract, the suit cannot be maintained. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 309. Whether, if there was such proof, the bank would be precluded from maintaining its suit by the fact that it became a creditor after the contract was made and with knowledge thereof (see *Sarna* v. *American Bosch Magneto Corp., ante,* 340, 343 need not be decided. See, however, *First Trust Co.* v. *Illinois Central Railroad,* 256 Fed. Rep. 830; *Cross* v. *Beguelin,* 252 N. Y. 262, 266.

2. The bank makes the further contention that even if it cannot maintain its suit on the ground already considered it can maintain the suit on the ground that at the time of the trial the corporation was insolvent. This contention cannot be sustained.

On the findings in this suit the contract for the purchase by the corporation of its own stock and the notes given in

pursuance thereof on which the actions at law were brought were lawful contracts when made and were enforceable at the times fixed for performance by payment of these notes and at the times when the actions at law were brought. At all of these times the corporation was solvent. Neither the obligations incurred by the corporation when it made the original contract nor those incurred when it gave these notes did or would render the corporation insolvent so that there was any fraudulent conveyance within the meaning of the uniform fraudulent conveyance law. G. L. (Ter. Ed.) c. 109A, § 4. There are findings to the effect that the financial condition of the corporation at the time of the trial, when it "was unable to pay its current liabilities as they fell due," was not due to the original contract when made, or to any fault on the part of the plaintiff in the actions at law, and could not have been reasonably anticipated at the time the contract was signed. Even if it is assumed in favor of the bank, as we do not decide, that it was an implied term of the original contract that it would not be carried out if at the time or times fixed for performance the corporation was insolvent or performance of the contract would render it insolvent (see *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 376), such implied limitation is not here applicable to the notes sued on. The obligations of the corporation thereon had matured while the corporation was solvent and were not contingent upon any further act of the plaintiff in the actions at law. And the corporation continued to be solvent until the actions at law were commenced. Changes thereafter in the financial condition of the corporation did not affect the enforceability as matter of law of the matured obligations upon which these actions were brought. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 308.

*Second.* There was no error in the refusal of the judge in each action at law to rule that on all the evidence the finding should be for the defendant.

This request presents in each of these actions the question of law whether the general finding for the plaintiff therein can be supported. The special findings and the general

findings for the plaintiff, if not inconsistent with the special findings, are to stand if warranted in law upon any possible view of the evidence. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

It is not argued that the evidence did not warrant the special findings except as it is argued that the findings that as of the time the contract of purchase was made and all times thereafter up to, at least, March 16, 1932 — after the commencement of the actions at law — the rights of creditors were not prejudiced by the contract, so far as such prejudice would result from impairment of capital, were not warranted. It is not argued that the findings were not warranted that the defendant corporation at all these times was solvent, in the ordinary sense of the term, which does not take into account the liability of the corporation to its stockholders. *Calnan* v. *Guaranty Security Corp.* 271 Mass. 533, 542. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 377.

For the reasons already stated in connection with the suit in equity the special findings warranted findings for the plaintiff in the actions at law. Proof that at the time the contract for the purchase by the corporation of its own stock was made, or at any later time, the stock could be paid for out of surplus was not an essential element of the plaintiff's case, nor was proof that the corporation was solvent at the time of the trial. Whether all the grounds on which the bank in the suit in equity relies to enjoin enforcement of the contract by actions on notes given in pursuance thereof were available to the corporation in defence to the actions at law on such notes need not be decided since, even if they were so available, findings for the plaintiff in those actions were warranted. Nothing is relied on as a ground of defence to these actions at law which is not relied on by the bank in the suit in equity as a ground for relief therein.

> *In the actions at law exceptions overruled.*
> *In the suit in equity decree affirmed with costs.*