THOMAS R. WINCHELL *vs.* PLYWOOD CORPORATION
(and a companion case [1]).

Suffolk.    November 1, 3, 1948. — April 7, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Corporation,* Purchase by corporation of its own stock, Officers and agents,
Contracts. *Contract,* Validity, For purchase of corporate stock, Con-
struction. *Agency,* Ratification. *Interest.*

A contract in writing for the purchase by a Massachusetts corporation of
shares of its stock from one of its directors was valid although executed
by its president in its behalf without authority and without a previous
formal meeting and vote by its board of directors where it appeared
that the subject matter was within the control of the directors, that
when the contract was made there were three directors, the president,
the seller and the corporation's attorney, who drafted the contract,
that they acted in good faith, and that at a subsequent meeting they
formally ratified "all the acts of the officers of the corporation in con-
nection with the business."

The fairness of a contract in writing, made in good faith and setting
forth mutual obligations of a corporation and one of its directors with
respect to a purchase by the corporation of the director's shares on
a tender of them by him at an indefinite date in the future and at a
price to be ascertained from their book value at the time of the tender,
must be tested by the circumstances existing at the time the con-
tract was made; the mere fact that, at the time of a tender by the
director nearly seven years later, shortly before a liquidation of the
corporation, he would receive more for his shares under the contract
than would the other stockholders through the liquidation, did not
render the contract unenforceable by him.

A contract in writing, made in behalf of a Massachusetts corporation
whose stock was closely held and acquiesced in by all its three di-
rectors, acting in good faith, under which one of the directors agreed
not to dispose of any of his stock (including that which he might
thereafter acquire) without first tendering it to the corporation at
book value as shown on the last day of the preceding month and the
corporation agreed that "upon the tender of said stock to it by"
the director it would purchase the stock at that value, when tested
by circumstances existing when it was made, was fair and mutually
advantageous to the corporation and the director and was enforce-
able without its having been ratified by all the stockholders.

[1] The companion case is Joseph A. Grimes & others *vs.* Thomas R. Winchell
& another.

A contract in writing between a director of a corporation and the corpora-
tion, reciting that "the corporation desires to obtain the [director's]
stock [in the corporation] in case of the termination of . . . [his]
employment and . . . [he] desires to assure himself of a market for
his stock," and providing that he would not dispose of his stock
"without first tendering.it to the corporation," that, "upon his death
or termination of his employment by the corporation for any reason,
the corporation shall have the right to purchase" his stock, and that
"upon the tender of said stock to it by . . . [him] or upon . . . [his]
death or termination of [his] employment . . . by the corporation
it will acquire" the stock, was enforceable by him upon a tender
within its terms, and not merely in case of his death or termination of
his employment.

A decree in a suit in equity enforcing a contract in writing by a corpora-
tion to purchase stock of a director at book value on a specified day
on a tender by him should have included interest from the date of
the tender on an unpaid balance of such purchase price.

TWO BILLS IN EQUITY, filed in the Superior Court
respectively on September 30, 1946, and September 26, 1947.

The suits were heard together by *O'Brien,* J.

*C. C. Worth,* (*F. N. Flaschner* with him,) for Plywood
Corporation and others.

*J. P. Rooney,* (*P. V. Power* with him,) for Winchell.

SPALDING, J. These are two suits in equity. The first
was brought by Thomas R. Winchell against the Plywood
Corporation, hereinafter sometimes called Plywood, to
compel specific performance of a contract for the purchase
of his stock in the defendant corporation; and the second
was brought by Joseph A. Grimes, Gordon M. Antworth
and Samuel J. Antworth, stockholders of Plywood, to
enjoin Winchell from prosecuting the first suit. The cases
were tried together. The judge made voluntary findings
and rulings in the first case and ordered a decree for specific
performance of the agreement, but without interest on the
sum ordered to be paid. In the second suit, the judge,
after adopting the findings and rulings made in the first
suit, ordered the entry of a decree dismissing the bill.
Decrees were entered in accordance with these orders.
From the decree in the first case both parties appealed;
from the decree in the second case the plaintiffs appealed.
The evidence is reported.

The pertinent facts are these: On July 25, 1938, Winchell entered into a written agreement with Plywood in which he agreed not to dispose of or to sell any of his Plywood stock (including that which he might thereafter acquire) without first tendering it to Plywood at the book value as shown on the books of account on the last day of the month preceding such tender. Winchell further agreed that "upon his death or termination of his employment by . . . [Plywood] for any reason" Plywood should have the right to repurchase the stock. Plywood agreed that "upon the tender of said stock to it by the said Winchell or upon the death or termination of employment of the said Winchell by . . . [Plywood]" it would purchase the stock at "the book value as shown on the books of account . . . [of Plywood] on the last day of the month preceding the said tender, death or termination of employment."[1] This agreement was executed on behalf of Plywood by Ralph M. Buck, its president. At that time Winchell owned three hundred shares of Plywood stock, which he had acquired in 1937. In 1941 this was split up on the basis of thirty-two for one, so that he then had ninety-six hundred shares. During 1944 Winchell acquired five thousand four hundred four additional shares from Buck which brought the number of his shares to a total of fifteen thousand four, or 9.88 per cent of Plywood's outstanding stock.

The stock of Plywood is closely held. At the time of the agreement the sole stockholders were Ralph M. Buck, his wife Mabel S. Buck, and Winchell. In 1942 Gordon M. and Samuel J. Antworth (plaintiffs in the second suit) became stockholders, and in 1943 Joseph A. Grimes, also a plaintiff in that suit, became a stockholder.[2] The shares acquired by them had previously stood in the name of Mrs. Buck.

On May 24, 1945, at a special meeting of the stockholders

---

[1] By amendments to the agreement made on June 8, 1940, the method of computing book value was defined.

[2] The number of shares held by each was as follows: Gordon M. Antworth, one thousand five shares; Samuel J. Antworth, one thousand four hundred fifty shares; and Joseph A. Grimes, five thousand shares.

called for the purpose of considering and acting upon an offer of Atlas Plywood Corporation to purchase the assets of Plywood, it was voted to accept the offer. Winchell, who at that time was treasurer of Plywood and knew of the Atlas offer prior to the meeting just referred to, attended the meeting and voted to accept the offer. Earlier that day he had made a tender of his stock to Plywood for repurchase. The tender was formally rejected by Plywood in a letter signed by Samuel J. Antworth, its vice-president. [1]

At about this time the stockholders of Plywood, including Winchell, voted to make a complete distribution of Plywood's assets as a preliminary step to dissolving the corporation. Subsequently a partial liquidating dividend of $30,008 was paid to Winchell by Plywood under a stipulation that it was to be paid and received without prejudice to the rights of either party. The judge found, as he could have on the evidence, that the book value of Winchell's shares as of the last day of the month preceding the tender (April 30, 1945) was $46,467. Ruling that the contract of July 25, 1938, between Winchell and Plywood was valid and enforceable and that the action of Winchell in voting to dissolve Plywood did not operate as a waiver of his rights under the agreement, he ordered a decree to be entered ordering Plywood to accept Winchell's tender and to pay him the sum of $16,459 (but without interest) which represented the difference between the amount he had received and the book value of the shares as of April 30, 1945.

Since the case of *Dupee* v. *Boston Water Power Co.* 114 Mass. 37, it has been the law of this Commonwealth that a Massachusetts corporation, unless forbidden by statute, may purchase its own stock. *Dustin* v. *Randall Faichney Corp.* 263 Mass. 99, 102. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 110. *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 307. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 429. And agreements to do this are

---

[1] It was conceded in the letter that "all formalities as to the tender were met"; rejection of the tender was put on the grounds that the agreement of July 25, 1938, was inapplicable to the "present situation" and that it did not apply to the five thousand four shares acquired by the plaintiff in 1944.

enforceable "subject, at least, to the limitations that the purchase must be made in good faith and without prejudice to creditors and stockholders." *Scriggins* v. *Thomas Dalby Co.* 290 Mass. 414, 418. See *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 307–309; *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 430–433.

We assume, as the defendant corporation has argued, that Buck as its president had no authority to bind it in a contract such as the one under consideration. See *Horowitz* v. *State Street Trust Co.* 283 Mass. 53, 58–59; *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 532–533. Whether Winchell's stock should be purchased by Plywood, and upon what terms, was a matter within the control of its directors in the exercise of their sound judgment.[1] *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass. 302, 307–308. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 433. While there was no vote of Plywood expressly authorizing the contract under consideration, the evidence clearly establishes that all of the directors knew of it. At the time the contract was made there were three directors, Buck, Winchell and Mr. McCann. Two of them, Buck and Winchell, executed the contract, and Mr. McCann, who was the attorney for Plywood, drafted it. It has been said that "where a majority of a board of directors of a corporation participate in the doing of a corporate act within their powers and the other directors have knowledge of and adopt it by acquiescence or otherwise the corporation is bound by their action, and this without a formal meeting and vote of the board." *Hurley* v. *Ornsteen,* 311 Mass. 477, 480.

Not only did all of the directors know of the contract of July 25, 1938, and actively participate in its formulation and execution, but it could have been found that they ratified it. The evidence showed that at the annual meeting following the execution of the contract, at which all directors were present, there was a formal ratification by the board

[1] Under its by-law the directors of Plywood were given power to "make all contracts and agreements in behalf of the corporation which in their judgment are necessary or convenient for the successful operation of the business thereof."

of "all the acts of the officers of the corporation in connection with the business since the last annual meeting." The judge found that the directors acted in good faith.

Plywood contends that since one of the parties to the contract sought to be enforced was one of its directors it was not valid unless ratified by all the stockholders and that such ratification was lacking here. The judge found, and it is not disputed, that "the stockholders at successive annual meetings ratified all acts of the directors from 1937 to 1941 inclusive." The evidence discloses that at the annual meetings following the contract of July 25, 1938, and the amendments of June 8, 1940, Mrs. Buck, the largest stockholder, was not present and her shares were represented by proxy. The notice of meeting was waived on both occasions and the matter of the contract or its amendments was not specifically brought to the attention of those present, nor does it appear that these matters were brought to the attention of Mrs. Buck when her proxies were obtained or at any other time. Whatever the situation might be as to those stockholders who were present at these meetings and knew of the contract and amendments, it cannot be said that there was ratification on the part of Mrs. Buck. The knowledge of the other stockholders ought not to be imputed to her in these circumstances. See *General Investment Co.* v. *American Hide & Leather Co.* 97 N. J. Eq. 230; *Iback* v. *Elevator Supplies Co. Inc.* 118 N. J. Eq. 90, 92; *United Hotels Co. of America, Inc.* v. *Mealey,* 147 Fed. (2d) 816, 819 (C. C. A. 2). "Ratification imports a full knowledge of all the essential facts." *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 334–335. If, therefore, ratification by the stockholders was necessary to the validity of the contract under consideration, such ratification was not shown.

Statements may be found in our decisions to the effect that contracts between a corporation and one of its officers or directors are valid if, with full knowledge of all the facts, they are assented to by all the officers and the stockholders. See, for example, *Warren* v. *Para Rubber Shoe Co.* 166 Mass.

97, 100; *Nye* v. *Storer,* 168 Mass. 53; *Flint* v. *Codman,* 247 Mass. 463, 472; *Dome Realty Co.* v. *Gould,* 285 Mass. 294, 299; *George H. Gilbert Manuf. Co.* v. *Goldfine,* 317 Mass. 681, 685. We do not question the correctness of these statements as applied to contracts with a director where, in conflict with his duty of loyalty to the corporation, he is obtaining some personal advantage or profit. Such contracts may be avoided or may be ratified by the directors and stockholders. And in determining whether such conflict exists courts will subject the dealings between the director and the corporation to vigorous scrutiny, and when any contract or transaction is challenged the burden is on the director not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 599. *Pepper* v. *Litton,* 308 U. S. 295, 306. But as we recently said in *Foster* v. *Bowen,* 311 Mass. 359 (a case involving a lease between a corporation and one of its directors), "There is no absolute prohibition of dealings between a corporation and its officer, if proper safeguards are observed to insure that those acting for the corporation are themselves disinterested and the utmost good faith is exercised" (page 366). The court went on to say that the directors other than the one with whom the lease was made might have ratified it. See *Union Pacific Railroad* v. *Credit Mobilier of America,* 135 Mass. 367, 376–377; *Fort Payne Rolling Mill* v. *Hill,* 174 Mass. 224; *Fillebrown* v. *Hayward,* 190 Mass. 472, 478. An able statement of what seems to us to be the correct rule governing contracts between a corporation and one of its directors will be found in *Wyman* v. *Bowman,* 127 Fed. 257, where the court, per Sanborn, J., said "Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officials

work in unison for the welfare of the corporation, are valid and enforceable both at law and in equity. . . . But contracts and transactions between individuals and corporations of which they are directors or officers, which are unfair, in which the individuals have secured an undue or unjust advantage, in which an antagonism between the interest of the individuals and the duty of the officials has resulted in the triumph of the former, are voidable at the option of the corporation, its creditors or stockholders" (pages 273–274). Our decisions are not at variance with this rule.

The contract here, we think, comes within the first part of the rule rather than the latter. It had all the earmarks of an arms-length bargain and the judge found that the directors acted in good faith. Winchell's interest in the contract was not adverse to that of the corporation. The contract at the time it was made was mutually advantageous to Winchell and the corporation. Under it Winchell was assured of a market for his stock and Plywood was protected against the stock getting into the hands of outsiders. Agreements of this sort between a corporation and its stockholders are not uncommon and are enforceable. *New England Trust Co.* v. *Abbott*, 162 Mass. 148. *Krauss* v. *Kuechler*, 300 Mass. 346, 349. *New England Trust Co.* v. *Spaulding*, 310 Mass. 424. The price that Winchell was to receive for his stock on tendering it was entirely fortuitous, since it depended on the book value of the stock at an indefinite date in the future. If such an agreement had been made with one who was not a director its validity could not be doubted. That it was made with a director does not, in our opinion, infect it with illegality. The contract was not one which could be enforced only on proof of ratification by all the stockholders.

While, as stated above, the law in this Commonwealth is settled that a corporation may purchase its own stock, it has been assumed in some of our decisions that this can be done only if there is no prejudice to creditors or stockholders. See *Barrett* v. *W. A. Webster Lumber Co.* 275 Mass.

302, 309; *Scriggins* v. *Thomas Dalby Co.* 290 Mass. 414, 418; *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 430–432. We shall deal with the case on that assumption. We need not concern ourselves with the rights of creditors. Plywood was at all times here material solvent and no contention has been made that the enforcement of the contract would affect the rights of creditors. In none of the cases cited above does the court undertake to state what would be prejudice where the rights of other stockholders are involved. In the case at bar there was evidence that the liquidation expense per share if all of the stock was included in the computation would be fifty-nine and nine tenths cents per share. If Winchell's stock was not included, then the liquidating expense per share would be sixty-six and five tenths cents per share. It also appeared that the value of the fixed assets of Plywood as of April 30, 1945, as shown in its balance sheet was $327,293.65 and that this figure was used in computing the book value of Winchell's shares. The price, however, fixed for the sale of these assets to Atlas Plywood Corporation by the vote of May 24, 1945, was $290,000.

The fairness of the contract with respect to the rights of other stockholders must be tested by the circumstances existing at the time it was made. At that time it could not have been known by either party to the bargain when the shares would be purchased by Plywood and what their value would then be. Their value at that time might be greater or less than their value at the time the company was wound up. As events turned out here Winchell is obtaining somewhat more for his shares, by reason of his tender prior to liquidation, than the other shareholders are receiving. But this is not sufficient in our opinion to prevent enforcement of a contract found to have been made in good faith many years before. See *Scriggins* v. *Thomas Dalby Co.* 290 Mass. 414, 420–421. The cases of *Augsburg Land & Improvement Co.* v. *Pepper*, 95 Va. 92, and *Interstate Distributing Co.* v. *Connell*, 46 Pa. Super. Ct. 551, relied on by the defendant corporation, are distinguishable from the case at bar. In

both cases the agreement of the corporation to purchase its stock was made after a vote had been taken, of which the stockholder had knowledge, to liquidate the corporation, and it was held that an agreement made in these circumstances was not fair to the other stockholders. That is not the case here.

Finally the defendant contends that the contract did not contemplate enforcement by Winchell under the circumstances existing at the time he made his tender. In paragraph 1 of the agreement Winchell agrees that he will not sell or dispose of his stock "without first tendering it to the corporation," and that "upon his death or termination of his employment by the corporation for any reason, the corporation shall have the right to purchase" his stock. But what appears to be merely an option for the benefit of the corporation is negatived in the next paragraph which provides that the corporation "upon the tender of said stock to it by the said Winchell *or* upon the death or termination of employment of the said Winchell by the corporation it *will* acquire" the stock (emphasis supplied). In the "whereas" clauses of the agreement, after reciting that Winchell's employment with the corporation is not for any definite period, it is stated that "the corporation desires to obtain the stock in case of the termination of Winchell's employment and Winchell desires to assure himself of a market for his stock." The gist of the defendant's argument is that the parties contemplated enforcement of the agreement only in the case of Winchell's death or termination of his employment, neither of which occurred here. We cannot place such a construction on the contract. The second paragraph of the agreement provides that upon the happening of any one of the following contingencies Plywood will purchase Winchell's stock: (1) upon tender by him of the stock, (2) upon his death or (3) upon the termination of his employment by the corporation. If we were to construe the agreement as Plywood would have us we would, in effect, be holding that one of the clauses in the agreement is to be ignored. "In interpreting

contracts every word is to be given force so far as practicable." *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375.

Other questions argued by the defendant but not discussed in this opinion have not been overlooked. We find nothing in them that requires discussion.

It remains to consider Winchell's appeal. He challenges the decree because it did not award him interest on the sum of $16,459 which Plywood was ordered to pay him. The decree in this respect was erroneous. Winchell has been deprived of the use of the money that Plywood was obligated to pay him at the time of the tender and it would be unjust to deprive him of interest on it. *Davis* v. *Continental Realty Co.* 320 Mass. 428, 431. The usual rule, applicable to cases at law and in equity, is that when money is not paid when due the plaintiff is entitled to interest, by way of damages, from the time when it should have been paid. *Williams* v. *American Bank*, 4 Met. 317, 320–322. *Donahue* v. *Partridge*, 160 Mass. 336, 339. *Goldman* v. *Worcester*, 236 Mass. 319, 320. *Ratner* v. *Hill*, 270 Mass. 249, 253. *Borst* v. *Young*, 302 Mass. 124, 126. We see no reason for departing from that rule here. Since Winchell's tender called for the payment of a liquidated sum, interest should run from the date of the tender. *Cochrane* v. *Forbes*, 267 Mass. 417, 421.

The second suit does not require separate discussion. The plaintiffs in that case have joined in the defendant's brief in the first case and have raised the same questions. What has been said with reference to those questions is decisive of the second case.

The final decree in the first case is to be modified by striking out the provision which states that no interest is to be added to the sum ordered to be paid and by substituting therefor a provision that said sum is to bear interest from May 24, 1945, and, as so modified, it is affirmed. The final decree in the second case is affirmed with costs.

*So ordered.*